Argued October 6; affirmed October 19; rehearing denied November 9, 1937.

RUST *v.* PRATT ET AL.

(72 P. (2d) 533)

*Tom Garland*, of Portland, for appellants.

*James R. Bain*, District Attorney, and T. B. Handley, Deputy District Attorney, both of Portland (A. M. Hodler, Deputy District Attorney, of Portland, on the brief), for respondents.

BEAN, C. J. These proceedings are for a writ of habeas corpus, and the four cases are consolidated for the purpose of hearing and determination.

On November 28, 1934, the grand jury of Multnomah county returned an indictment against one Art Shearer and 32 others, charging defendants with the crime of rioting. Art Shearer was granted a separate trial. The state contended that the alleged riot occurred in front of a structure located at the northeast corner of Fourteenth and Alberta streets, Portland, Oregon, which was then used as a hiring hall by an organization of longshoremen known as the Columbia Rivermen's Association. During the trial the State of Oregon called these petitioners as witnesses on behalf of the state and each of them was asked a pertinent and material question. Mr. Rust was asked:

"Now, will you state if on August 20th, and if you do not recognize or recall that date I will state it is the date of the rioting at Alberta and Fourteenth, and did you state that you were present and inside the hall at any time between the hours of 7:00 o'clock in the morning and 9:30 in the morning on August 20, 1934."

He replied: "I refuse to answer the question as the answer might incriminate me."

The other three petitioners were asked similar questions and each refused to answer for the reason that the answer might tend to incrimiate him. Thereupon the trial judge made an exhaustive and thorough investigation of all the facts and surrounding circumstances and held that the answers to the questions would not incriminate them and directed them to answer the questions. Upon their continued refusal the court adjudged each of them in contempt and made and entered an order of commitment in each case, reciting the facts pertaining to the matter and directing each witness to answer the question, which he repeatedly in the presence of the court and the jury refused to answer, whereupon the judge ordered the said witnesses to answer the question upon the ground and for the reason that any answers the witnesses might give to the question would not have a tendency to subject them to punishment for a felony, and cautioned them that they would be guilty of contempt of court if they persisted in refusing to answer said question, but each of the petitioners still refused to answer, and it was adjudged by the court that in doing so each of said petitioners was and is in contempt of court for refusal to answer the question so propounded by the deputy district attorney, and it was further ordered and adjudged that the said petitioners be and each is hereby committed to the county jail of Multnomah county, Oregon, for a period of six months, or until such time as he shall see fit to purge the contempt.

The orders, dated May 20, 1935, are identical except as to names. Thereupon petitioners, with supersedeas, appealed to this court, where the judgment of the lower court was affirmed. See *In Re Jennings*, 154 Or. 482 (59 P. (2d) 702). A petition for rehearing was denied and in due course the mandate of this court was

handed down to the circuit court and an order of affirmance in conformity therewith was duly entered, whereupon respondent Martin T. Pratt, as sheriff of Multnomah county, Oregon, took the petitioners into custody. The petitioners immediately applied to the circuit court for a writ of habeas corpus, which was issued out of that court. The sheriff moved to quash the writ on the ground that the petition for the writ did not state facts sufficient to authorize its issuance. This motion was heard by the Honorable John P. Winter, presiding judge of the circuit court for Multnomah county, Oregon, who overruled and disallowed the motion and directed the sheriff to make a return to the writ and ordered that all further proceedings therein be had before Judge Tucker, who, after a hearing and taking the matter under advisement, dismissed the writ and remanded the petitioners to custody, from which order these appeals were taken.

Petitioners submit that the court did not have jurisdiction, under the statute, to render the particular judgment, that is, a jail sentence, for the kind of contempt mentioned in the order of contempt and commitment herein, and that the petitioners' right to be released upon habeas corpus does not depend upon the legality or illegality of his original caption, but upon that of his detainer; that the commitment or detainer is absolutely void on its face, as it sets forth acts that under the punishments for contempt do not carry any sentence except a fine, and that a jail sentence is a different kind of punishment and therefore it is absolutely void.

Section 8-501, Oregon Code 1930, defines contempt of court as follows:

"The following acts or omissions, in respect to a court of justice, or proceedings therein, are deemed to

be contempt of the authority of the court;   *   *   *
10.   *   *   *   refusing to be sworn or answer as a
witness;   *   *   *.''

■ Borrowing from the opinion of the learned trial
judge:

" 'A direct contempt of court is the committing of
some improper act in the presence of the court while in
session.   *   *   *   Contempt is the wilful disregard of
the authority of a court of justice.' State v. Driscoll,
50 Pac. (2d) 584.

"As is stated in the case of State v. Kaiser, 20 Or.
50, (58), the imposition of punishment for contempt
'depends upon whether the offending was done in the
immediate view and presence of the court.' Also 'when
the act constituting the contempt is not committed in
the immediate view and presence of the court or of-
ficer, it must be such an one as is calculated to affect
the right or remedy of a party in a litigation. Section
651, (now 8,502, Oregon Laws) which limits the pun-
ishment to a fine not exceeding $100, unless it ap-
pears that the right or remedy of a party to an action,
suit or proceeding was defeated or prejudiced by the
contempt, clearly shows this.   *   *   *' Also State Ex
Rel. Kruckman v. Rogers, 124 Or. 656.''

In *State v. Driscoll,* 151 Or. 363 (50 P. (2d) 581),
it is stated:

"A court may act summarily in a contempt pro-
ceeding when the acts constituting the contempt take
place in the immediate view and presence of the court,
and, where such acts are not in the immediate view and
presence of the court, the court can act only upon an
affidavit first having been presented: §§ 8-503, 8-504,
Oregon Code 1930. The statute of Oregon does not limit
the power of the court to punish for contempt, but pre-
scribes the method of procedure for the exercise of its
power: State v. Brownell, 79 Or. 123 (154 P. 428).''

See also to the same effect, 13 C. J. 47, §§ 47, 62,
where it is stated:

"Except when the legislature is given authority to prescribe the limit of the court's power to punish for contempt, it can neither destroy nor abridge such power, although it may regulate its use, and has the right to limit control over contempts in those courts which are of its own creation."

■■ The writ of habeas corpus will not ordinarily issue to correct mere errors in the verdict, as where a verdict for murder recited guilty and did not specify the degree: Ferris, Extraordinary Legal Remedies, 45, § 25. Habeas corpus cannot be used for the correction of errors of the trial court as to informal or irregular matters: (§ 24) The power to punish for contempt is a power not derived from any statute, but is inherent in all courts, and arises from necessity. It is implied because it is necessary to the exercise of all other powers. Its existence is essential to the preservation of order in judicial proceedings, and to enforce judgments, orders and writs of the courts, and consequently to due administration of justice: Ferris, Extraordinary Legal Remedies, 86, § 65.

■■ It is only when the court pronounces a judgment in a criminal case, which is not authorized by law under any circumstances in the particular case made by the pleadings, whether the trial has proceeded regularly or otherwise, that judgment can be said to be void so as to justify the discharge of the defendant held in custody by such judgment. To warrant a discharge of a prisoner, the sentence under which he is held must be not only erroneous and voidable but absolutely void. A habeas corpus proceeding is a collateral attack of a civil nature to impeach the validity of a judgment or sentence of another court in a criminal proceeding, and it should therefore be limited to cases in which the judgment or sentence attacked is clearly void by reason of its hav-

ing been rendered without jurisdiction or by reason of the court having exceeded its jurisdiction in the premises: 1 Bailey on Habeas Corpus, pp. 83, 84, 85, § 33.

■ In the case at bar the sentence of the court was in accordance with the provisions of the law providing for the punishment. It was in the immediate presence of the court and the judgment committed each of the petitioners to jail until he purged himself of the contempt, but in no event for a period longer than six months.

■ It is urged that the judgment is inoperative, in view of the fact that at this time there is no opportunity for the petitioners to purge themselves, but this is not the proper construction of the sentence imposed. There was an opportunity afforded for petitioners to purge themselves but they did not take advantage of the opportunity and let it pass.

■ Section 8-503, Oregon Code 1930, provides that when a contempt is committed in the immediate view and presence of the court it may be punished summarily, for which an order must be made reciting the facts as occurring in such immediate presence, determining that the person proceeded against is thereby guilty of a contempt, and that he be punished as therein prescribed. The power of the court to punish summarily for contempt has existed from the earliest period of the common law and is not within the application of the constitutional provisions guaranteeing a trial by jury or providing against or depriving persons of liberty without due process of law. A defendant in a contempt proceeding is not entitled to a trial by jury: 35 C. J. 194, § 99; *In re Debs,* 158 U. S. 564 (15 S. Ct. 900, 39 L. Ed. 1092); *Jones v. Mould,* 151 Iowa 599 (132 N. W.

45); *State v. McClain,* 136 Or. 60 (298 P. 213). In the McClain case, Mr. Justice BROWN, in the opinion, quoted with approval from the Iowa case as follows:

" 'The power to proceed summarily, without formal indictment and without the intervention of a jury, to hear charges of contempt of court, and to assess punishment upon those found guilty, has been an attribute of all courts of record in every stage of the development of our system of procedure.' "

■ Habeas corpus does not lie to review the judgment of a court of competent jurisdiction for either errors of fact or law where the relief can be worked out by a writ of error or appeal. Defendants in the present case have had the benefit of an appeal and hearing in this court. Any informality or imperfection in the writ of commitment could have been taken advantage of upon such appeal.

■ The petitioners were found guilty of contempt of court and that judgment has been affirmed by this court. The contempt so established and affirmed was a direct contempt committed in the immediate view and presence of the court. It prejudiced the rights of the state and may have defeated those rights so as to result in a flagrant miscarriage of justice as the state was deprived of pertinent and material testimony in an important criminal case: §§ 8-501, 8-503, Oregon Code 1930; *State ex rel. Kruckman v. Rogers,* 124 Or. 656 (265 P. 784); *Lindsey v. People ex rel. Rush,* 66 Colo. 343 (181 P. 531, 16 A. L. R. 1250).

The order of judgment of Judge Tucker of the circuit court dismissing the writ ought to be affirmed. It is so ordered.

ROSSMAN, KELLY and BELT, JJ., concur.